

**BC**

FILED
1/16/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AXM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


IGG, LLC,
   Plaintiff,

v.

Latasha McWright,
Living Healthy Brands, LLC,
   Defendants.

Case No. 1:25-cv-09602
Judge Andrea R. Wood


**DEFENDANT LATASHA MCWRIGHT'S MOTION TO DISMISS COUNTS I, II, AND III
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b)**


Defendant Latasha McWright ("McWright"), appearing pro se, respectfully moves this Court

to dismiss Counts I, II, and III of Plaintiff IGG, LLC's First Amended Complaint ("Complaint")

as to her, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and states as

follows:

**I. INTRODUCTION**

Plaintiff IGG, LLC ("IGG") seeks to hold Ms. McWright personally liable for a failed business

transaction in which she served only as an aide between IGG, a Michigan limited liability

company called Living Healthy Brands, LLC ("Living Healthy"), and a third-party supplier,

Steelepoint Chemical, LLC d/b/a Steelepoint Holdings, LLC ("Steelepoint").

IGG's own allegations and exhibits show that IGG contracted with Living Healthy - not with

Ms. McWright personally—and that Steelepoint was the entity responsible for

manufacturing, holding, and shipping the test kits. IGG's First Amended Complaint therefore

fails to state any plausible claim for breach of contract, fraud, or unjust enrichment against Ms. McWright as an individual.

Count I (Breach of Contract) fails as to Ms. McWright because the alleged agreements are purchase orders issued to "The Living Healthy Company" / Living Healthy Brands, LLC and the Complaint consistently describes Ms. McWright as an actual or apparent "agent" of that LLC, not as an individual party.

Count II (Fraud) fails as to Ms. McWright because it improperly lumps her together with the LLC, does not identify any specific misrepresentation made by her personally, and relies on conclusory statements rather than particularized facts as required by Rule 9(b).

Count III (Unjust Enrichment) fails as to Ms. McWright because IGG alleges only that "McWright and Living Healthy" received funds, while the undisputed reality is that the wired funds were forwarded on to Steelepoint and Ms. McWright retained only a limited commission consistent with her role as an aide.

Critically, IGG does not allege that Ms. McWright personally received, retained, or controlled the funds at issue, nor does it allege any personal benefit that could support liability. Living Healthy Brands, LLC has been defaulted under Rule 55(a), but that default does not extend to Ms. McWright personally. See Minute Entry of Nov. 25, 2025.

For these reasons, the Court should dismiss Counts I, II, and III as to Ms. McWright.

**II. ALLEGATIONS RELEVANT TO THIS MOTION**

For purposes of this motion only, McWright summarizes the allegations from the Complaint and attached exhibits.

1. IGG, LLC ("IGG") is an Illinois limited liability company that purchases products, including COVID-19 Antigen Rapid Test kits, for distribution and sale.

2. Plaintiff alleges that it previously did successful transactions with McWright, acting as Living Healthy, in which IGG would issue a purchase order to McWright/Living Healthy, who would then obtain products from a supplier and arrange delivery.

3. In January 2022, IGG sought to purchase 151,200 iHealth COVID-19 Antigen Rapid Test kits.

4. On or about January 11, 2022, IGG issued Purchase Orders Nos. 23 and 24 for a total price of $1,965,600.00. The purchase orders, attached to the Complaint as Exhibits A and B, identify the vendor as "Living Healthy" / "The Living Healthy Company," not "Latasha McWright" individually.

5. Plaintiff alleges that McWright, acting for Living Healthy, represented that Living Healthy would purchase the test kits from Steelepoint Chemical, LLC ("Steelepoint") and that Steelepoint had test kits on hand and ready to ship upon receipt of funds.

6. On or about January 12, 2022, IGG wired approximately $1,965,600 (plus additional funds) to Living Healthy / McWright.

7. No test kits were ever delivered, and IGG demanded return of the funds.

8. Plaintiff asserts three counts against "Defendants" jointly: breach of contract (Count I), fraud (Count II), and unjust enrichment (Count III).

9. IGG's own exhibits demonstrate that Steelepoint—not Ms. McWright—issued the invoice and controlled product availability.

**III. LEGAL STANDARDS**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Conclusory allegations and legal conclusions are not entitled to the assumption of truth. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Where a plaintiff asserts claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to plead the circumstances of the alleged fraud with particularity, including the "who, what, when, where, and how" of the alleged misrepresentation. Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994).

Additionally, where a complaint attaches written instruments as exhibits, those exhibits control over contradictory allegations in the complaint. Forrest v. Universal Sav. Bank, F.A., 507 F.3d 540, 542 (7th Cir. 2007).

IGG's Amended Complaint contains none of the particularized facts Rule 9(b) requires.

**IV. ARGUMENT**

**A. COUNT I (BREACH OF CONTRACT) FAILS TO STATE A CLAIM AGAINST MCWRIGHT INDIVIDUALLY**

1. Plaintiff's exhibits show any contract was with Living Healthy/The Living Healthy Company, not with McWright personally

To state a claim for breach of contract under Illinois law, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resulting damages. As to McWright personally, Plaintiff fails at the first element.

The only alleged contracts are the two purchase orders dated January 11, 2022. Those purchase orders identify the vendor as "Living Healthy" / "The Living Healthy Company," not "Latasha McWright" individually. The Complaint does not allege that IGG entered into a written or oral contract with McWright in her personal capacity separate from her role as an alleged "agent or member" of Living Healthy. The documents contain no delivery date, no signature, and no terms governing performance by Ms. McWright personally.

At the November 25, 2025 hearing, the Court asked whether Plaintiff had established a contract. Plaintiff's counsel acknowledged that Plaintiff 'only has a 'PO'—establishing that Plaintiff lacks a written contract with McWright personally.

Where the exhibits show that the named contracting party is a business entity, not the individual, courts do not infer a personal contract with the individual agent or member absent clear allegations to that effect.

2. The Complaint does not plead essential elements of a personal contract with McWright

The Complaint repeatedly refers to "Defendants" collectively and asserts that "Plaintiff IGG and Defendants entered into valid and enforceable contracts through the Purchase Orders #23 and #24." Complaint ¶ 45. But it does not allege:

- That IGG made an offer to McWright personally;

- That McWright personally accepted such an offer; or

- That IGG and McWright individually agreed upon contract terms binding her in her personal capacity.

This type of collective pleading is insufficient to establish privity between IGG and McWright as an individual.

3. Allegations that McWright was an "agent" of Living Healthy do not create personal contract liability

Even if the Court accepts as true that "at all times" McWright was the actual and/or apparent agent of Living Healthy, an agent is generally not personally liable on a contract made for a disclosed principal. Under Illinois law, an agent acting for a disclosed principal is not personally liable on a contract absent an express assumption of liability, which is not alleged here.

Plaintiff does not allege that Living Healthy was undisclosed, that McWright exceeded her authority, or that she expressly assumed personal liability for the LLC's contractual obligations.

Because Plaintiff has not plausibly alleged a contract between IGG and McWright individually, Count I should be dismissed as to her under Rule 12(b)(6).

**B. COUNT II (FRAUD) FAILS TO SATISFY RULE 9(b) AS TO MCWRIGHT**

Count II alleges "Fraud Against McWright, Living Healthy." As to McWright, the Complaint does not meet the heightened pleading standard of Rule 9(b).

1. The Complaint impermissibly lumps "McWright and Living Healthy" together

Throughout Count II, Plaintiff attributes alleged misrepresentations to "McWright, individually and as 'agent, servant and employee' of Living Healthy," without separating what specific statements are alleged to have been made by McWright personally versus by Living Healthy or Steelepoint. Rule 9(b) requires more than collective allegations; it requires identification of the "who, what, when, where, and how" for each defendant.

The Complaint does not specify:

- The exact words or statements that McWright personally made;

- The date, time, and medium (call, email, text) of each specific statement;

- Where those statements occurred; or

- How those statements were false when made to her own knowledge.

Instead, Plaintiff generally asserts that "McWright represented" that test kits were available and would be delivered, and then concludes those statements were false. Statements such as "McWright committed fraud" or "McWright was responsible" are legal conclusions, not factual allegations. Such conclusory statements are not entitled to the assumption of truth. Twombly, 550 U.S. at 555.

Rule 9(b) prohibits group pleading; IGG must identify specific statements made by Ms. McWright herself, and it does not. Accordingly, Count II must be dismissed as to her.

2. The Complaint does not plead scienter with particularity as to McWright

To state a claim for common-law fraud, a plaintiff must allege that the defendant knowingly made a false statement of material fact with intent to induce reliance or knowledge that reliance was probable. The Complaint offers only conclusory assertions that "McWright either knew or should have known" that Steelepoint would not perform and that "they had no intention of ever completing or fulfilling the order." Complaint ¶¶ 59–60.

The Complaint does not allege:

- Any concrete facts about communications between McWright and Steelepoint showing she knew Steelepoint would not deliver;

- Any history suggesting McWright knew Steelepoint was unreliable; or

- Any detailed facts showing that, at the time she allegedly spoke, she believed her statements to be false.

These are precisely the types of conclusory scienter allegations that fail under Rule 9(b).

3. Plaintiff's own allegations show Steelepoint was the substantive source of the key representations

The Complaint alleges that McWright stated that Living Healthy "would be purchasing the test kits from Steelepoint" and that Steelepoint had test kits on hand. It further alleges that "purported Steelepoint representatives" joined a Zoom call with IGG to reassure IGG about delivery.

These allegations suggest that Steelepoint—not McWright personally—was the substantive source of the assurances regarding product availability and shipping. If McWright was relaying information from Steelepoint or participating in calls where Steelepoint spoke directly to IGG, then the Complaint must plead with specificity what additional misrepresentations she herself made and what she personally knew at the time. It does not.

Moreover, the Amended Complaint does not allege facts showing that Ms. McWright personally benefited from any alleged fraud beyond a lawful commission for facilitating an introduction. Allegations based on hindsight or dissatisfaction with a transaction's outcome do not state a fraud claim. Because Count II does not satisfy Rule 9(b) as to McWright, it should be dismissed as to her individually.

**C. COUNT III (UNJUST ENRICHMENT) FAILS TO STATE A CLAIM AGAINST MCWRIGHT INDIVIDUALLY**

Count III alleges unjust enrichment "in the alternative" against "McWright, Living Healthy." As to McWright individually, Count III fails for at least three reasons.

1. Plaintiff alleges an express contract, which precludes unjust enrichment

Plaintiff affirmatively alleges that IGG and Defendants entered into "valid and enforceable contracts" through Purchase Orders 23 and 24. Under Illinois law, unjust enrichment is generally not available where an express contract governs the parties' relationship. Although Plaintiff labels Count III as "in the alternative," its own allegations of contract make unjust enrichment improper as a parallel theory.

2. Plaintiff does not plausibly allege what benefit McWright personally retained without legal justification

Unjust enrichment requires a showing that the defendant unjustly retained a benefit to the plaintiff's detriment, and that retention violates fundamental principles of equity.

The Complaint alleges that "McWright and Living Healthy received over $1,965,600 from IGG but failed to deliver the requested goods" and that they "retained IGG's $1,965,600." Complaint ¶¶ 68–69. But it does not distinguish between:

- Funds allegedly retained by Living Healthy as an LLC;

- Funds allegedly passed through to Steelepoint; or

- Any specific portion that McWright personally kept.

3. Unjust enrichment is an improper remedy where the defendant did not control the funds

Unjust enrichment is an equitable remedy that typically applies where a defendant has retained a windfall to which equity denies him or her a claim. See Hadley v. Dorchester, Inc.,

855 F.3d at 967. Here, Plaintiff's own allegations show that Ms. McWright did not control the $1.96 million—it was forwarded to Steelepoint per the arrangement. The Complaint does not allege that Ms. McWright still holds those funds, diverted them to personal use, or retained anything beyond an agreed aide commission. Unjust enrichment cannot serve as a backdoor to impose personal liability on an aide who lacks control over disputed assets.

The exhibits and allegations demonstrate:

- Steelepoint issued the invoice.

- Steelepoint received the funds.

- Steelepoint controlled shipping and logistics.

- IGG communicated directly with Steelepoint about delays.

- IGG canceled the order with Steelepoint.

- IGG demanded refunds from Steelepoint.

These facts undermine any claim that Ms. McWright caused IGG's alleged losses.

For these reasons, Count III fails to state a claim for unjust enrichment against Ms. McWright and should be dismissed as to her.

### D. CONTEXT: IGG'S OWN LITIGATION HISTORY AND COUNSEL'S STATEMENTS CONFIRM MCWRIGHT IS NOT THE PROPER TARGET

Although not strictly necessary for this Motion, IGG's own litigation history and counsel's comments at the November 25, 2025 hearing strongly confirm that IGG views Ms. McWright as a procedural conduit rather than the true wrongdoer.

Notably, IGG previously filed suit in Texas District Court against the same defendants over the same transaction, then voluntarily non-suited that action without any judicial finding of liability—further confirming that this lawsuit is not an appropriate vehicle for imposing personal liability on Ms. McWright.  At the November 25, 2025 hearing in this case, Plaintiff's counsel acknowledged that the dispute primarily concerns Steelepoint, characterizing Ms. McWright as a 'middleman or intermediary.'

Statements made by Plaintiff's counsel at the November 25, 2025 hearing—including that Ms. McWright was merely a "middleman" and that IGG "had to sue her" only to reach issues involving Steelepoint—further undermine IGG's own theory of liability. Courts take notice of contradictory statements between counsel's oral representations and the pleading.

This confirms what the documents already show: IGG's real dispute is with Steelepoint and perhaps Living Healthy as a company, not with Ms. McWright in her personal capacity. The Complaint's attempt to impose personal liability on her should therefore be viewed with particular caution and, for the reasons above, dismissed.

**V. CONCLUSION**

For the reasons stated above, Defendant Latasha McWright respectfully requests as follows:

1. Grant Defendant's Motion and dismiss Counts I, II, and III of Plaintiff's First Amended Complaint (Dkt. 4) as to Defendant Latasha McWright individually pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b);

2. Enter such dismissal with prejudice; and

3. Award Defendant such other and further relief as this Court deems just and proper.

The allegations against Ms. McWright rely on collective references to "Defendants" and

contain no factual basis for imposing personal liability. Because the claims fail as a matter of

law, dismissal with prejudice is appropriate.


Respectfully submitted,
Latasha McWright
2601 Maplewood Avenue
Lansing, MI 48910
Phone: (517) 719-2113
Email: lmcwright@hotmail.com
Dated: January 16, 2026

**CERTIFICATE OF SERVICE**

I, Latasha McWright, certify that on January 16, 2026, I caused a true and correct copy of the foregoing Defendant Latasha McWright's Motion to Dismiss Counts I, II, and III to be served on Plaintiff's counsel of record by electronic filing and email, addressed as follows:

James A. Karamanis

Kenneth A. Nazarian

Jasmina Djordjevic de la Torre

Barney & Karamanis, LLP

180 North Stetson, Suite 3050

Chicago, IL 60601

Email: attorney@bkchicagolaw.com; james@bkchicagolaw.com; jasmina@bkchicagolaw.com; ken@bkchicagolaw.com; michaela@bkchicagolaw.com; bonnie@bkchicagolaw.com


Date: January 16, 2026


/s/ Latasha McWright

Latasha McWright, Pro Se